IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01542-PAB-CBS

In Re: CENTRIX FINANCIAL, LLC, et al,

CENTRIX FINANCIAL LIQUIDATING TRUST, and
JEFFREY A. WEINMAN in his capacity as Trustee for the Centrix Financial
Liquidating Trust

  Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and
AIG DOMESTIC CLAIMS, INC.,

  Defendants.

---

## ORDER

---

  This matter is before the Court on demand for jury trial and motion for withdrawal
of the reference to the bankruptcy court ("Defs.' Mot.") [Docket No. 1] filed by
defendants National Union Fire Insurance Company of Pittsburgh, PA. and AIG
Domestic Claims, Inc.  Plaintiffs object to the requested relief [Docket No. 3], and
defendants have filed a reply in support of their motion [Docket No. 4].  At the request
of the Court, both parties submitted status reports on April 12, 2010.  Defendants filed a
supplement to their status report on April 26, 2010.  The motion is ripe for disposition.

## I.  BACKGROUND

  The motion for withdrawal of reference before the Court arises from a
proceeding ("the Adversary Proceeding") that is pending in the United States
Bankruptcy Court for the District of Colorado, No. 09-01150-EEB.  Pursuant to an order

in the underlying bankruptcy case, No. 06-16403-EEB, confirming the Second

Amended Liquidating Chapter 11 Plan, as modified, plaintiff Centrix Financial

Liquidating Trust ("Trust") is the successor-in-interest to the debtors, Centrix Financial

LLC ("Centrix") and certain other entities associated with Centrix.  Under the confirmed

Plan, plaintiff Jeffrey A. Weinman ("Trustee") has authority to commence adversary

proceedings to enforce any claim belonging to the debtors and, consequently, the

Trust.  [Bankruptcy Case No. 06-16403-EEB, Docket No. 1831 at Art. 10, ¶ A].

In September 2008, plaintiffs filed an action in the bankruptcy court against

Robert E. Sutton and numerous other defendants ("the Sutton Proceeding").  In the

Sutton Proceeding, plaintiffs brought many claims for relief, alleging that Mr. Sutton

engaged in a series of fraudulent schemes that ultimately bankrupted the debtors.

Certain of the Sutton Proceeding defendants filed a motion to withdraw the reference,

which this Court granted in part and denied in part on June 8, 2009, declining to

immediately withdraw the reference.  *See In re Centrix Financial, LLC*, No. 09-cv-0088-

PAB, 2009 WL 1605826 (D. Colo. June 8, 2009).

Prior to the Sutton Proceeding, defendants filed a proof of claim in the

bankruptcy court on June 18, 2007.  *See* Docket No. 3 at 45.  Part of that claim related

to an insurance policy ("the Fidelity Bond") issued by defendants to debtor Centrix,

covering losses resulting from wrongful acts by Centrix employees and officers:

> Claimant may have provided the Debtors with various surety, fidelity and
> other bonds for the account of the Debtors.  Claim is asserted for all such
> bonds issued or outstanding and for all premiums, fees and expenses due
> thereunder, whether or not specifically listed or described in the attached
> documents.  Nothing in this description of the bond programs is intended to
> vary, amend or alter in any way the terms, conditions, coverages, limitations,
> exclusions or dates of coverage of any bond.  Should Claimant be called

2

> upon to pay on any such bond, Claimant may amend this proof of claim to
> assert a claim on account of such payment.

Docket No. 3 at 46-47, ¶ 4.  Within the same proof of claim, defendants "also assert[ed]

an administrative expense claim for all services provided, risks insured or occurrences

occurring after the Petition Date, all or a portion of which may be set forth in this proof

of claim. . . ." Docket No. 3 at 48, ¶ 9; *see* Docket No. 3 at 58-61 (subsequent

Administrative Expense Claim).  Plaintiffs did call upon Defendants to pay on the

Fidelity Bond, filing a proof of loss in support of which plaintiffs cited the allegations in

their Sutton Proceeding complaint.  *See* Docket No. 3 at 43 (sending the Sutton

Proceeding complaint to defendants "in further support of the Fidelity Bond Claim

Department Proof of Loss . . . dated January 14, 2008").  Defendants did not pay the

insurance claim, and the Trustee commenced the Adversary Proceeding at issue by

filing a complaint against defendants in the bankruptcy court on March 13, 2009 [Bankr.

Case No. 09-1150-EEB, Docket No. 1].  Defendants filed the present demand for jury

trial and motion for withdrawal of the reference to the bankruptcy court on June 30,

2009.

## II.  ANALYSIS

Under 28 U.S.C. § 157(d), the district court may withdraw its reference of a case

to bankruptcy court on motion of a party or on its own motion "for cause shown."  28

U.S.C. § 157(d).[1]  Defendants contend that cause has been shown for an immediate

---

[1]The district court must withdraw the reference in certain circumstances where
the proceedings implicate both the provisions of Title 11 of the United States Code and
other sources of federal law, 28 U.S.C. § 157(d); but defendants do not contend such is
the case here.

withdrawal because (1) they have a right to a jury trial in the Adversary Proceeding that they have not waived and (2) this is a "non-core" proceeding that would be more efficiently managed in the district court.

Plaintiffs raise three counts arising out of defendants' alleged breach of the Fidelity Bond, including a breach of contract claim.  It is undisputed that plaintiffs' contract claim is legal in nature and, therefore, implicates the right to a jury trial of those defendants that have timely requested one, moved for transfer to this Court, and not waived their jury trial right.  *See In re Latimer*, 918 F.2d 136, 137 (10th Cir. 1990) ("to avoid waiver, parties seeking a jury trial must combine their request for a jury trial with a request for transfer to the district court").  Because bankruptcy courts may not conduct jury trials, *In re Kaiser Steel Corp.*, 911 F.2d 380, 392 (10th Cir. 1990), proof of a right to a jury trial may constitute cause for permissive withdrawal.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

Plaintiffs, however, contend that defendants have waived their right to a jury trial. This argument is premised on the doctrine that a creditor submits to the equitable jurisdiction of the bankruptcy court by filing a claim against the bankruptcy estate.  As the Supreme Court explained:

> by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.  If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity.

*Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (per curiam).  Citing this doctrine, some courts have held that a creditor waives a right to trial by jury under the Seventh Amendment by filing a claim against the bankruptcy estate, without further inquiry into

4

the nexus between the claims made against the estate and the claims asserted against the creditor in the adversary proceeding. *See, e.g.*, *In re Barnes*, 2008 WL 2979716, at *1 (D. Colo. July 31, 2008) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56-58 (1989)). Other courts hold that a creditor submits to the bankruptcy court's equitable jurisdiction only to the extent its claim against the estate implicates the "claims-allowance process." *See, e.g.*, *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993).

Defendants admit that they have filed a proof of claim against the estate in the bankruptcy case, but contend that "[r]esolution of the instant suit is unrelated to the . . . claim." Defs.' Mot. at 10. Therefore, defendants argue, they are still entitled to a trial. In so arguing, defendants rely on the more restrictive view of waiver endorsed by the Second Circuit in *Germain v. Connecticut National Bank*, as well as the decision in *Katchen v. Landy*, 336 F.2d 535, 536-37 (10th Cir. 1964), *aff'd* 382 U.S. 323 (1966). Defendants argue that the Supreme Court affirmed the Tenth Circuit's decision in *Katchen* that filing a claim impliedly consents to bankruptcy court jurisdiction over the claim and left untouched the Tenth Circuit's conclusion that such consent does not extend to claims that "do not involve a preference, setoff, voidable lien, or a fraudulent transfer, and which are wholly unrelated to the creditor's claim." *Katchen*, 336 F.2d at 537; *see Germain*, 988 F.2d at 1329 ("[T]he *Katchen*, *Granfinanciera*, and *Langenkamp* line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim – and does so not so much on a theory of waiver as on the

5

theory that the legal issue has been converted to an issue of equity.").  Defendants

contend that "the current insurance coverage proceeding is in no way a part of the

'claims-allowance process' for National Union's claim for premiums and other Centrix

obligations under its insurance products."  Defs.' Reply [Docket No. 4] at 4.

Whether the insurance coverage proceeding is separate from the claims-

allowance process is far from clear on the record before the Court.  *See generally*

Docket No. 3 at 46-47, ¶ 4 (Defendants' Proof of Claim, "Fidelity and Surety Bonds");

*see, e.g.*, Docket No. 3 at 47, ¶ 4 ("Should Claimant be called upon to pay on any such

bond, Claimant may amend this proof of claim to assert a claim on account of such

payment."); Docket No. 3 at 60, ¶ 5 (Administrative Expense Claim) ("As the amount

owed to Claimant relates to the period arising after the Petition Date and *the Debtors*

*received a substantial benefit from the existence of the insurance coverage*, Claimant is

entitled to an administrative expense claim, pursuant to section 503(b) of the

Bankruptcy Code.") (emphasis added); *cf. Granfinanciera, S.A. v. Nordberg*, 492 U.S.

33, 59 n.14 (1989) ("[B]y submitting a claim against the bankruptcy estate, creditors

subject themselves to the court's equitable powers to disallow those claims, even

though the debtor's opposing counterclaims are legal in nature and the Seventh

Amendment would have entitled creditors to a jury trial had they not tendered claims

against the estate.").[2]  The Court, however, deems it premature to resolve the waiver

---

[2]*Granfinanciera*, 492 U.S. at 59 n.14 ("'Respondents' contention means that, while invoking the court's jurisdiction to establish their right to participate in the distribution, they may deny its power to require them to account for what they misappropriated.'") (quoting *Katchen v. Landy*, 382 U.S. 323, 335 (1966)) (additional quotation marks and citation omitted).

question.  The case may never require a trial.  Even if it does, and the defendants waived that right, the Court "is vested with a broad degree of discretion in determining whether a jury trial shall nonetheless be granted."  *Hazelrigg v. Am. Fid. & Cas. Co.*, 241 F.2d 871, 873 (10th Cir. 1957).  "If and when the threat to their Seventh Amendment rights becomes concrete, . . . [defendants] may seek appropriate remedies at that time."  *Matter of Lieb*, 915 F.2d 180, 185 (5th Cir. 1990).

Until such time, defendants' rights are not infringed by the bankruptcy court retaining jurisdiction over this matter for pre-trial proceedings.  As the Court has stated previously, *see In re Centrix Financial, LLC*, 2009 WL 1605826 (D. Colo. June 8, 2009), while a party's right to a jury trial on some or all claims raised in an adversary proceeding may constitute cause for withdrawal of the reference to bankruptcy court, it is within the district court's discretion to determine at what stage in the proceedings the reference should be withdrawn.  *In re Orion Pictures*, 4 F.3d at 1101; *In re HealthCentral.com*, 504 F.3d 775, 787-88 (9th Cir. 2007) (noting that the bankruptcy "system promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them. . . . Only by allowing the bankruptcy court to retain jurisdiction over the action until *trial is actually ready* do we ensure that our bankruptcy system is carried out.") (emphasis in original); *In re Hardesty*, 190 B.R. 653, 656 (D. Kan. 1995).  Courts in this District have repeatedly held that where the bankruptcy court possesses more familiarity with facts of a case incident to its management of the bankruptcy proceedings, withdrawal of the reference to bankruptcy court should be delayed until the case is ready for trial.  *See*,

*e.g.*, *In re Kirk E. Douglas, Inc.*, 170 B.R. 169, 170 (D. Colo. 1994); *In re M & L Bus. Mach. Co., Inc.*, 159 B.R. 932, 934 (D. Colo. 1993).  Similarly, other courts "universally" hold that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court."  *In re HealthCentral.com*, 504 F.3d at 787 (collecting cases).  This practice honors the Seventh Amendment's guarantee that "the right of trial by jury shall be preserved," U.S. Const. amend. VII, while furthering the congressional policies underlying the statutory bankruptcy scheme set forth in Title 11 of the United States Code.  *Cf. In re Hardesty*, 190 B.R. at 657 ("[T]he defendant does not show how he would be prejudiced by having the bankruptcy court handle the pretrial matters and by having the case withdrawn only when it is ready for trial.").

That is true despite defendants' contention that the Court should withdraw the reference immediately because district court management of this "non-core proceeding" would be more efficient.  Section 157 of the Bankruptcy Code differentiates between "core proceedings" and "non-core proceedings."  28 U.S.C. § 157.  "Bankruptcy judges may hear and determine . . . all core proceedings . . . ."  28 U.S.C. § 157(b)(1).  A bankruptcy judge may also hear a non-core proceeding, but, "[i]n such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

In support of their argument that they have shown cause for a permissive

8

withdrawal, defendants cite the Second Circuit's decision in *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993), where the Court noted that "[d]istrict courts in th[e Second Circuit] have considered a number of factors in evaluating cause" including "whether the claim or proceeding is core or non-core."

The Tenth Circuit has found that "[c]ore proceedings are proceedings which have no existence outside of bankruptcy." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990). In *Gardner*, the Tenth Circuit found that, in the context of that case, "determination of whether the marital property is part of the bankruptcy estate is a core proceeding. . . ." *Id.* The question of whether this case is a "non-core" proceeding is not, as defendants insist, so clear. In a post-*Orion* case, the Second Circuit addressed the issue of whether a case arising out of a pre-petition indemnity insurance contract was a "core" proceeding. The Second Circuit found that

> [n]otwithstanding that the Trust's claims are upon pre-petition contracts, we conclude that the impact these contracts have on other core bankruptcy functions nevertheless render the proceedings core. Indemnity insurance contracts, particularly where the debtor is faced with substantial liability claims within the coverage of the policy, "may well be ... 'the most important asset of [i.e., the debtor's] estate.'" As such, resolving disputes relating to major insurance contracts are bound to have a significant impact on the administration of the estate. . . .
>
> If the Trust were initially to pay the claimants with assets earmarked for other creditors only to be informed afterwards that the payments did not trigger the Clubs' indemnification obligation, the result would be an inequitable distribution among the creditors. Therefore, in order to effectuate an equitable distribution of the bankruptcy estate, a comprehensive declaratory judgment is required to determine (1) whether a chosen payment plan will trigger the indemnification obligation and (2) the amounts payable under the insurance contracts. Thus, the declaratory proceedings brought by the Trust in this case directly affect the bankruptcy court's core administrative function of asset allocation among creditors, and for that reason they are core.

*In re U.S. Lines, Inc.*, 197 F.3d 631, 638-39 (2d Cir. 1999) (citations omitted).  Similar concerns may well be implicated in the present case.  The Court declines the opportunity to resolve the issue, however, because it will not change the outcome of the present matter.  *See McCord v. Papantaniou*, 316 B.R. 113, 125 (E.D.N.Y. 2004) ("'Because the classification of a matter as core or non-core is not wholly determinative, these factors of judicial economy must be considered regardless of the outcome' of the core/non-core inquiry.") (citation omitted).  Even if the Adversary Proceeding is "non-core," defendants have failed to convince the Court that the other relevant factors support an immediate withdrawal of the reference.

The additional factors cited by defendants include "whether [the proceeding] is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."  *In re Orion Pictures Corp.*, 4 F.3d at 1101.  Such considerations are largely case-specific.  As the *Orion* court pointed out,

> If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference.  However, a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

*In re Orion Pictures Corp.*, 4 F.3d at 1101-02.  In this case, even if the matter is ultimately found to be non-core, "[d]iscovery . . . could prove significant and time consuming, and the bankruptcy court is familiar with the issues."  *In re Hardesty*, 190 B.R. 653, 656-57 (D. Kan. 1995).  The Adversary Proceeding appears to be in its initial stages, *see* Defs.' Status Report [Docket No. 16] at 1 ("Since June 30, 2009, there have

been no proceedings in the Bankruptcy Court relevant to this insurance dispute between Defendants and [plaintiffs]."), and the Bankruptcy Court is in a better position to oversee the discovery process in this matter, seeing as the basis for plaintiffs' claim for insurance will largely overlap with the facts underlying the Sutton Proceeding. *Cf. In re Hardesty*, 190 B.R. at 656 (noting that "[i]n non-core proceedings, a bankruptcy court may resolve matters not requiring the final order or judgment reserved to the district court under § 157(c)(1)," that "[a]nother pertinent circumstance is whether the bankruptcy court is familiar with the facts and issues presented," and that the "adversary case is still in its preliminary stages without discovery having even commenced"); *McCord*, 316 B.R. at 126 ("Given that the core and other claims underlying the adversary proceeding are based on related facts . . . it would be efficient for the bankruptcy court to preside over all claims at this stage.").  That defendants might *prefer* a different forum is of no moment; indeed, discouraging forum shopping is an important factor the Court weighs.  *See In re Westmoreland Coal Co.*, 221 B.R. 512, 515 (D. Colo. 1998) ("Taken to its logical conclusion, the Trustees' argument is that parties to bankruptcy proceedings should be entitled to circumvent the bankruptcy court and proceed directly to appeal where they anticipate an unfavorable result from the bankruptcy court."); *In re Hardesty*, 190 B.R. at 656-57 ("Allowing the pretrial matters of the adversary case to proceed in bankruptcy court discourages forum shopping.").

In sum, the Court determines that most efficient approach is to permit the case to stay, at present, in the bankruptcy court.  *See McCord*, 316 B.R. at 125 ("Courts routinely deny motions to withdraw reference despite a litigant's refusal to consent to a

jury trial in bankruptcy court because of prevailing concerns about judicial economy.").

Defendants can raise the "core proceeding" issue in the first instance with the

Bankruptcy Court. *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine,

on the judge's own motion or on timely motion of a party, whether a proceeding is a

core proceeding under this subsection or is a proceeding that is otherwise related to a

case under title 11.  A determination that a proceeding is not a core proceeding shall

not be made solely on the basis that its resolution may be affected by State law.").  If

the matter returns to this Court for a requested trial, the Court can then determine

whether there has been a waiver of trial and potentially take up the question of whether

this is a "core" proceeding.  And, even assuming those speculative events transpire,

and the Court additionally determines that the matter is a non-core proceeding,

efficiency will not necessarily have been thwarted.  *Cf. In re Westmoreland Coal Co.*,

221 B.R. at 515 ("Even if the Motion involved a noncore proceeding, the fact that it

might be more 'efficient' to have the issue decided in the first instance by the district

court would not be dispositive.").  The Court will have the benefit of the bankruptcy

court's rulings on any issues not objected to by the parties.  *See* 28 U.S.C. § 157(c)(1)

("In [a non-core] proceeding, the bankruptcy judge shall submit proposed findings of

fact and conclusions of law to the district court, and any final order or judgment shall be

entered by the district judge after considering the bankruptcy judge's proposed findings

and conclusions and after reviewing de novo those matters to which any party has

timely and specifically objected.").  Moreover, "[o]ther issues argued by the defendant at

some point may have to be addressed in proposed findings and conclusions, but

considering the bankruptcy court's familiarity with the proceedings and relevant

documents and its knowledge of bankruptcy law, the proposed order likely will materially assist the district court in making a final decision." *In re Hardesty*, 190 B.R. at 656.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' demand for jury trial and motion for withdrawal of reference [Docket No. 1] is DENIED without prejudice and this matter is closed.

DATED January 7, 2011.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge