IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01542-PAB-CBS

In re: CENTRIX FINANCIAL, LLC, et al.,

CENTRIX FINANCIAL LIQUIDATING TRUST, and
JEFFREY A. WEINMAN in his capacity as Trustee for the Centrix Financial
Liquidating Trust,

      Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and
AIG DOMESTIC CLAIMS, INC.,

      Defendants.

---

## ORDER

---

      This matter is before the Court on the Consolidated Motions in Limine [Docket No. 106] filed by defendants National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and AIG Domestic Claims, Inc. (collectively, "defendants").[1]

## I.  BACKGROUND[2]

      On March 13, 2009, plaintiffs Centrix Financial Liquidating Trust and Jeffrey A. Weinman (collectively, "Centrix") filed an adversary complaint against defendants in the Bankruptcy Court for the District of Colorado, alleging that defendants breached their

---

[1]Defendants' consolidated motion raises ten separate issues.  *See* Docket No. 106.  For ease of reference, although defendants use the term "issues," the Court will refer to each as its own motion (*e.g.*, "defendants' second motion in limine").

[2]The Court will address defendants' first and fourth motions in limine in a separate order.  Accordingly, this Order addresses defendants' motions 2-3 and 5-10.

obligation under a Fidelity Bond (the "fidelity bond" or "the bond") issued by National

Union to insure Centrix against fraudulent actions by Centrix officers and employees.

Docket No. 1 at 41-44, ¶¶ 89-105; *see generally* Bankruptcy Case No. 09-01150-EEB.

Centrix alleges that it suffered losses that are covered under the fidelity bond.

Specifically, Centrix alleges that, from approximately 2002 to 2006, five former officers

of Centrix Financial, LLC, Robert Sutton, John Schreven, Roland Anderson, Gerald

Fitzgerald, and Howard Klemmer, fraudulently diverted "at least $83,000,000" from

Centrix, Docket No. 1 at 22, ¶ 2, that the losses were covered by the fidelity bond, *id.* at

42, ¶ 93, and that defendants have refused to satisfy their obligations under the bond.

*Id.* at 41, ¶ 87.  Centrix brings claims for breach of contract, declaratory judgment, and

specific performance.  *See generally id.*  As relevant to this Order, National Union

asserts the following defenses: that plaintiffs' suit was filed later than the contractual

limitation period of two years from the discovery of the loss, that plaintiffs claim losses

not covered by the fidelity bond, and that plaintiffs fail to show that the alleged acts that

caused the losses were dishonest or fraudulent.  *See* Docket No. 95 at 10-11.

## II.  ANALYSIS

Evidence is relevant if "it has any tendency to make a fact more or less probable

than it would be without the evidence; and . . . the fact is of consequence in determining

the action."  Fed. R. Evid. 401.  Federal Rule of Evidence 403 permits courts to exclude

relevant evidence "if its probative value is substantially outweighed by a danger of one

or more of the following: unfair prejudice, confusing the issues, misleading the jury,

undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R.

Evid. 403.

### A. Evidence Concerning Whether National Union was Prejudiced by Centrix Filing the Lawsuit After the Contractual Limitation Period

Defendants' second motion in limine seeks to exclude all evidence and argument

regarding whether defendants suffered prejudice due to Centrix's purported failure to

bring suit within the contractual limitations period.  Docket No. 106 at 5-6.  The fidelity

bond states that "[l]egal proceedings for the recovery of any loss hereunder shall not be

brought . . . after the expiration of 24 months from the discovery of such loss."  Docket

No. 106-1 at 15, § 5(d).  Centrix does not specifically respond to this motion.[3]

The Court finds that the issue of prejudice due to Centrix's purported late filing of

this action is irrelevant.  A statute of limitations defense is "legal rather than equitable,

so it may give defendants repose and is not premised on a showing of prejudice."  *Zuill*

*v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996).  Under Colorado law, agreements to

bring suit within a shorter period than prescribed by the applicable statute of limitations

are enforceable.  *See Grant Family Farms, Inc. v. Colo. Farm Bureau Mut. Ins. Co.*, 155

P.3d 537, 539 (Colo. App. 2006) ("parties to a contract may require that actions

founded on the contract be commenced within a shorter period of time than that

prescribed by the applicable statute of limitations"); *see also Kesling v. Am. Family Mut.*

*Ins. Co.*, 861 F. Supp. 2d 1274, 1281 (D. Colo. 2012) (1-year limitations period provided

---

[3]*See* Docket No. 112 at 4-7.  Centrix nominally responded to both defendants' first and second motions in limine, but only responded in substance to defendants' first motion, which sought to exclude evidence that National Union did not suffer prejudice as a result of Centrix's purported failure to comply with the bond's prompt notice requirement.

in homeowner's policy was enforceable under Colorado law); *Capitol Fixture & Supply Co. v. Nat'l Fire Ins. Co.*, 279 P.2d 435, 437 (Colo. 1955) (one-year limitation period in an insurance policy was not unreasonable).  The Court finds that, since the contractual limitations period is intended to supplant the applicable statute of limitations, no showing of prejudice is required for defendants to assert this defense.  As a result, evidence on the issue of whether defendants suffered prejudice due to Centrix's purported failure to bring suit within the two-year contractual limitations period is irrelevant.

### B.  Centrix' Employees' Purported Ignorance of the Fidelity Bond

Defendants' third motion in limine seeks to exclude all evidence or argument that any particular Centrix employee or executive was ignorant of the existence or terms of the fidelity bond.  Docket No. 106 at 7.  Centrix responds that coverage under the bond is triggered "when the insured first becomes aware of facts which would cause a reasonable person to assume that a ***loss of a type covered by this bond*** has been or will be incurred."  Docket No. 112 at 8 (emphasis in original).  Centrix argues that this language assumes that its employees had to know about the bond in order to connect discovery of the underlying actions with discovery of a "loss of a type covered by this bond." *Id.*

The Court rejects Centrix's argument as contrary to Colorado law.  In Colorado, an entity "in possession of [an insurance] policy . . . [is] charged with knowledge of the restrictions in the policy."  *Pete's Satire, Inc. v. Commercial Union Ins. Co.*, 698 P.2d 1388, 1391 (Colo. App. 1985).  Centrix's argument, which cites to South Carolina law, is

4

unpersuasive.  First, Centrix offers no argument premised on Colorado law.  Second, the South Carolina case that Centrix cites concerned a case where the insured's former president "through connivance and fraud, concealed the existence of th[e] bond." *Farley v. Am. Sur. Co. of N.Y.*, 188 S.E. 776, 781 (S.C. 1936), *overruled on other grounds by Crystal Ice Co. of Columbia, Inc. v. The First Colonial Corp.*, 257 S.E. 2d 496 (S.C. 1979).  Centrix offers no evidence of active concealment of the existence of the fidelity bond here and instead argues that it should be able to introduce evidence from "multiple witnesses who were former Centrix employees" who "either did not know of the existence of the bond, did not know of the contents or coverages provided by the bond, or knew of the bond but did not believe that any of the prior lawsuits, claims, or identified events merited filing a claim under the Fidelity Bond."  Docket No. 112 at 8. The Court finds that any purported ignorance of the bond or its terms on the part of former Centrix employees is irrelevant.  Moreover, even if relevant, the evidence would still be inadmissible under Rule 403 since its probative value is substantially outweighed by undue prejudice to defendants–namely, the risk that the evidence may confuse the jury into believing that Centrix employees' ignorance of the bond presents a legal defense to failure to give notice.

### C.  Evidence of National Union's Processing of Centrix's Claim

Defendants' fifth motion in limine seeks to exclude evidence and argument concerning the manner in which National Union processed Centrix's claim.  Docket No. 106 at 10-11.  National Union's argument is based on a "Tolling Agreement" that the parties entered into in order to resolve a conflict of interest involving Centrix's counsel,

who has represented National Union and its affiliates in other cases. *Id.* Under the

tolling agreement, in relevant part, National Union agreed not to seek disqualification of

Centrix's counsel in exchange for Centrix's agreement not to assert any bad faith claim

against National Union. *Id.* at 11.

Based on the tolling agreement, National Union seeks to exclude any evidence

of alleged "stalling," "delay," or "bad faith." *Id.* Centrix responds that defendants' file for

its claim includes myriad "written admissions that support coverage for the claim and

negate AIG's defenses to the claims in this case." Docket No. 112 at 11.

Centrix appears to misconstrue defendants' motion. As defendants state in their

reply, they do not seek to exclude "all evidence of [National Union's] processing of the

claim," only evidence that appears probative of a bad faith claim, which Centrix has

disclaimed. *See* Docket No. 115 at 7.

It is unclear whether Centrix opposes defendants' fifth motion in limine.

Regardless, the Court finds that any evidence or argument concerning delay, stalling, or

bad faith processing of Centrix's claim is not relevant to any of the claims or defenses in

this matter.

### D.  Evidence of Acts that Constitute Fraud Based on Insolvency

Defendants' sixth motion in limine seeks to prohibit Centrix from introducing

evidence or argument that particular acts were fraudulent because they post-dated

Centrix's insolvency and thus constitute "constructive fraud" or "fraudulent transfer"

under the Bankruptcy Code. Docket No. 106 at 11-12. The Bankruptcy Code states

regarding fraudulent transfers and obligations that a bankruptcy trustee

"may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. §§ 548(a)(1)(B)(i)-(ii).  In other words, a transfer may be a "constructive fraud" so long as (1) the transfer occurred within 2 years of the date of filing a bankruptcy petition, (2) the debtor received "less than a reasonably equivalent value" in the transfer, and (3) the debtor was insolvent as of the date of the transfer, became insolvent because of the transfer, or made the transfer for the benefit of an insider. "[N]o proof of actual fraud is required.  Rather, constructively fraudulent transactions are defined simply as transactions in which the debtor receives less than reasonably equivalent value, at a time when the debtor was insolvent under one of [four] of the provided insolvency tests, and the transaction occurs less than [two] year[s] before the

debtor files its bankruptcy petition." *Peltz v. Hatten*, 279 B.R. 710, 735 (Bankr. D. Del. 2002).[4]

Defendants argue that evidence of acts that are merely constructively fraudulent would confuse the jury, as constructive fraud is "fraud" in name only and is not a loss covered by the bond.  Docket No. 106 at 12.  Centrix responds that the term "fraud" encompasses both actual and constructive fraud.  Docket No. 112 at 12 (citing *Gen. Elec. Credit Corp. v. Wolverine Ins. Co.*, 362 N.W. 2d 595, 601 (Mich. 1984)).

The Court finds that the fidelity bond does not provide coverage for constructive fraud.  First, the Colorado Supreme Court recently held in *Shaw v. 17 West Mill St., LLC*, 307 P.3d 1046 (Colo. 2013), that the term "fraudulent release" in a statute does not encompass constructive fraud.  In *Shaw*, the issue was whether a statute that voids a public trustee's release of a deed of trust when such release was based on a "fraudulent request" encompasses releases that were based on constructive fraud. The court held that, based on the plain meaning of the term "fraudulent" (including "belonging to or characterized by fraud" or "founded on fraud"), "actual fraud is required for an act to be 'fraudulent.'" *Id.* at 1049 (citation omitted).  Based on the holding in *Shaw*, the Court concludes that the Colorado Supreme Court would interpret the fidelity bond's coverage of loss resulting from "dishonest or fraudulent acts" to cover only actual fraud.

---

[4]The fraudulent transfer provision in the Bankruptcy Code was amended effective April 20, 2005.  *See* Pub. L. 109-8, 119 Stat. 23, 177, 182, 214 (2005).  The substantive changes between the statute currently in effect and the statute as analyzed by *Peltz* are reflected in the Court's alterations to its quotation of *Peltz*.

Moreover, as numerous courts have held, "willfulness and an intent to deceive are necessary elements for an employee's acts to be 'dishonest and fraudulent'" under a fidelity bond. *Eglin Nat'l Bank v. Home Indem.* Co., 583 F.2d 1281, 1285 (5th Cir. 1978); *see also Gen. Analytics Corp. v. CNA Ins.* Cos., 86 F.3d 51, 53 (4th Cir. 1996) ("[e]stablishing intent is central to proving coverage under employee dishonesty policies")*; Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Md.*, 202 F.2d 794, 798 (7th Cir. 1953) (holding that, while "[t]he words 'dishonest' and 'fraudulent'" in a fidelity bond "are to be given a broad meaning[,]" fidelity bonds do not cover "mere negligence, mistake, or error in judgment"); *Oriental Fin. Group v. Federal Ins. Co.*, 309 F. Supp. 2d 216, 219-20 (D.P.R. 2004) (in the fidelity bond context, "dishonest or fraudulent acts must be made willfully or intentionally"). For this reason, at least two courts considering this precise question have found that liability under a fidelity bond "is not imposed on an insurer for the consequences of . . . constructively or technically fraudulent acts innocently done, even though they constitute a breach of obligation by the person whose fidelity is insured to the beneficiary." *First Nat'l Bank of S. Md. v. U.S. Fidelity & Guaranty Co.*, 340 A.2d 275, 284 (Md. App. 1975); *Foster v. Bowen*, 41 N.E. 2d 181, 183 (Mass. 1942) (a fidelity bond does not cover acts that were "merely constructively or technically a 'fraud,' or 'fraudulent'"); 11 Steven Plitt et al., *Couch on Insurance* § 161:2 (3d ed. 2008) (same).

The Court rejects Centrix's argument for the additional reason that the bond by its terms requires a showing that the loss occurred due to the intentional act of an employee. Rider 13 to the bond states that, to cause a covered loss, any dishonest or

fraudulent acts "must be committed by the Employee with the intent: (a) to cause the Insured to sustain such loss; or (b) to obtain financial benefit for the Employee or another person or entity."  Docket No. 106-1 at 35.  Thus, by its own terms, the bond excludes coverage for losses that are "fraudulent" only in that they meet the technical requirements of the constructive fraud provision in the Bankruptcy Code.

While the Court holds that only actual fraud is covered under the fidelity bond, it does not follow that any alleged loss that meets the elements of constructive fraud under the Bankruptcy Code cannot also be a loss covered by the bond.  In granting defendants' motion, the Court's holding extends only to those losses for which the constructive fraud provision is the sole basis for their "fraudulent or dishonest" nature.

### E.  Bad Actors Disclaimed in Interrogatory Responses

Defendants' seventh motion in limine seeks to exclude any evidence and argument that fifteen specifically named individuals[5] engaged in fraudulent or dishonest conduct that caused Centrix a loss covered by the fidelity bond.  Docket No. 106 at 13.

In an interrogatory, defendants provided Centrix with a list of seventeen names – the fifteen individuals relevant to this motion as well as Roland Anderson and Gerald Fitzgerald – and asked if Centrix "believe[s] that this individual acted dishonestly or fraudulently to cause a direct loss to Centrix Financial of the type alleged to be covered by the Fidelity Bond."  Docket No. 106-3 at 29-30.  For each of the names listed except

---

[5]Those individuals are: John Schreven, Howard Klemmer, Timothy Boates, Kevin Barry, Michael Mitchell, Mark Oleksik, Michael Connolly, Meredith Wright, Clark Gates, Dane Hooks, Maureen Mason, Hal Forkish, Amy Ray, Sherry Gurrentz, and Steve Thompson.  Docket No. 106 at 13.

for Mr. Anderson and Mr. Fitzgerald, Centrix answered "no." *Id.* at 30. In a separate interrogatory, defendants asked Centrix to "identify each officer or employee of Centrix Financial who engaged in or otherwise assisted with the alleged 'scheme of fraud and dishonesty that caused losses to Centrix Financial in excess of $83,000,000.'" *Id.* at 5. Centrix responded by identifying Mr. Sutton, Mr. Anderson, and Mr. Fitzgerald. *Id.* at 5-6. No other individuals were identified.

Defendants' motion argues that, since Centrix has not amended its interrogatory responses, Centrix should be precluded from introducing previously-undisclosed evidence concerning additional alleged bad actors. Docket No. 106 at 13. Centrix responds that, although its complaint was directed at the actions of Mr. Sutton, "[t]o the extent there was wrongdoing by other Centrix employees including any who may have been acting at the direction of or in collusion with Mr. Sutton, then the jury should be permitted to hear that evidence." Docket No. 112 at 13.

The Court finds that Centrix is prohibited from introducing any evidence or argument that is contrary to the above-referenced interrogatory responses. *See Procaps S.A. v. Pantheon Inc.*, 2015 WL 2239087 at *1 (S.D. Fla. May 12, 2015) (holding that a party's "supplemental interrogatory answers [are] a binding notice of its position, which it cannot change"). To the extent that Centrix, after serving its answers to these interrogatories, learned of information that rendered its answers incomplete or incorrect, it had a duty to supplement those responses. *See* Fed. R. Civ. P. 26(e)(1)(A). Centrix's failure to do so precludes it from introducing at trial evidence of any direct losses caused by dishonest or fraudulent acts committed by the fifteen

11

named individuals, since such evidence was not disclosed to defendants during the course of discovery.

### F.  Evidence of Financial Losses that are Not Covered by the Bond

In defendants' eighth motion in limine, defendants move to exclude three categories of evidence that they characterize as excluded from coverage under the bond: (1) credit card payments, (2) salaries paid to Robert Sutton's family members, and (3) goodwill payments that constitute "indirect losses."  Docket No. 106 at 13. Centrix argues that this seeks substantial dispositive relief and that defendants have not proved they are entitled to such relief.  Docket No. 112 at 13.

The Court grants defendants' motion with respect to credit card payments and denies it with respect to salaries paid to Mr. Sutton's family members and goodwill payments.  With respect to credit cards, the bond provides that it does not cover "loss resulting directly or indirectly from the use or purported use of credit, debit, charge, access, convenience, identification or other cards[.]" Docket No. 106-1 at 12.

As to the second category, salaries, defendants note that "salaries" are excluded, but the section of the bond that they cite applies to "salaries, commissions, fees, bonuses . . . or other employee benefits earned *in the normal course of business*."  Docket No. 106-1 at 35 (emphasis added).  The Court cannot conclude on the record before it that any payments made to members of Mr. Sutton's family were earned "in the normal course of business," a characterization to which Centrix would no doubt object.

The Court likewise rejects defendants' efforts to exclude evidence of the third category of losses, the so-called "goodwill payments," which defendants characterize

12

as "indirect losses."  Defendants' motion includes no details about these payments,

which Centrix claims amount to tens of millions of dollars.  *See* Docket No. 112 at 13.

Defendants' motion effectively seeks partial summary judgment as to these goodwill

payments on the basis of a one-paragraph motion in limine.  The Court declines to

grant such relief on the basis of an incomplete record.

### G.  Evidence Regarding Universal Commission Payments

Defendants' ninth motion in limine seeks to exclude evidence of a 25%

commission fee totaling approximately $5 million paid to Mr. Sutton by Universal

Insurance Company.  Docket No. 106 at 14-15.  Defendants first argue that the

commission fee, like the salaries paid to Mr. Sutton's family members, is excluded by

Rider 13.  The Court rejects this argument for the same reason it denied defendants'

motion to exclude evidence of goodwill payments: Rider 13 excludes only commissions

earned "in the normal course of business."  Docket No. 106-1 at 35.  The Court cannot

determine on the record before it whether the commission is excluded under Rider 13.[6]

Defendants also argue that evidence of the commission should be prohibited

because the commission was not listed in the proof of loss that Centrix filed in January

2008.  Docket No. 106 at 14.  The Court rejects this argument.  As the Seventh Circuit

has recognized, "[w]hen the dishonesty of an employee is discovered it is usually

impossible for an employer to have knowledge of each item of the loss."  *Irvin Jacobs*,

202 F.2d 794, 799-800.  Rather, "extended investigation by auditors is necessary"

---

[6]Defendants argue that the 25% commission was in line with industry standards, and that even Centrix's expert agreed.  *See* Docket No. 106 at 14.  Even if the Court accepts defendants' argument at face value, this does not conclusively establish that the commission is excluded under Rider 13.

before the full extent of the loss is known.  *Id.* at 800.  Thus, "[i]f the proof was itemized to the extent that was reasonably possible under the circumstances, and it was sufficient for defendant to ascertain the nature of the different items upon which the claim was based, it was sufficient."  *Id.*  The Court finds the reasoning in *Irvin Jacobs* persuasive.  At trial, Centrix will be allowed to present evidence concerning the commission, and both parties will be permitted to introduce evidence and argument regarding whether or not the commission was earned in the normal course of business.

## H.  Evidence of Federal Assistance to AIG or Liability of AIG Domestic Claims

Defendants' tenth motion is really two motions: first, defendants seek to exclude evidence of financial assistance that AIG received during the 2008 financial crisis. Second, defendants seek to exclude any evidence and argument that defendant AIG Domestic Claims is liable in this matter.  *See* Docket No. 106 at 15.  The Court addresses each issue in turn.

Regarding the receipt of federal assistance, the Court finds that any such evidence or argument is irrelevant and, if relevant, inadmissible under Rule 403 because its prejudicial effect substantially outweighs its probative value.  Centrix argues that the information is relevant because defendants never decided whether Centrix's claim was covered and that one of the reasons for defendants' failure to do so was that AIG was "instead focused on its own financial distress during the two years that followed submission of the claim in May 2007."  Docket No. 112 at 15.  The Court rejects this theory of relevance.  The reasons why Centrix's claim was not decided

prior to the initiation of this lawsuit have no bearing on whether Centrix's alleged losses are covered by the fidelity bond or on any of National Union's asserted defenses.

Regarding the liability of defendant AIG Domestic Claims, defendants argue that the only allegation in Centrix's complaint concerning AIG Domestic Claims is that it served as National Union's claims administrator.  Docket No. 106 at 15.  Centrix responds that AIG "has been extremely vocal in pressing its independent position in this case, and yet never sought dismissal."  Docket No. 112 at 15.

The Court agrees with Centrix.  Defendants' motion effectively seeks judgment on the pleadings in favor of AIG Domestic Claims.  Defendants have had the opportunity to test the sufficiency of Centrix's allegations against AIG Domestic Claims through a motion pursuant to Rule 12 and have not done so.  Accordingly, the Court declines to address this argument in its present posture.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants National Union Fire Insurance Company of Pittsburgh, PA and AIG Domestic Claims, Inc.'s Consolidated Motion in Limine [Docket No. 106] is **GRANTED** in part and **DENIED** in part as follows:

1. Defendants' second motion in limine is **GRANTED**.

2. Defendants' third motion in limine is **GRANTED**.

3. Defendants' fifth motion in limine is **GRANTED**.

4. Defendants' sixth motion in limine is **GRANTED**.

5. Defendants' seventh motion in limine is **GRANTED**.

6.  Defendants' eighth motion in limine is **GRANTED** to the extent that it seeks to exclude evidence of losses caused by credit card payments.  It is **DENIED** in all other respects.

7.  Defendants' ninth motion in limine is **DENIED**.

8.  Defendants' tenth motion in limine is **GRANTED** to the extent that it seeks to exclude evidence of federal assistance provided to AIG during the 2008 financial crisis. It is **DENIED** to the extent that it seeks to exclude any evidence and argument concerning liability of defendant AIG Domestic Claims, Inc.

DATED June 1, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge