IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01542-PAB-CBS

In re: CENTRIX FINANCIAL, LLC, et al.,

CENTRIX FINANCIAL LIQUIDATING TRUST, and
JEFFREY A. WEINMAN in his capacity as Trustee for the Centrix Financial
Liquidating Trust,

     Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and
AIG DOMESTIC CLAIMS, INC.,

     Defendants.

---

## ORDER

---

     This matter is before the Court on the Consolidated Motions in Limine [Docket
No. 106] filed by defendants National Union Fire Insurance Company of Pittsburgh, PA
("National Union") and AIG Domestic Claims, Inc. (collectively, "defendants").[1]

## I. BACKGROUND

     On March 13, 2009, plaintiffs Centrix Financial Liquidating Trust and Jeffrey A.
Weinman (collectively, "Centrix") filed an adversary complaint against defendants in the
Bankruptcy Court for the District of Colorado, alleging that defendants breached their

---

[1]Defendants' consolidated motion raises ten separate issues.  *See* Docket No.
106.  This Order addresses the first and fourth issues raised in defendants'
consolidated motion.  For ease of reference, the Court refers to these as defendants'
first and fourth motions in limine.  The Court addressed defendants' remaining motions
in limine in a separate order.  *See* Docket No. 166.

obligation under a Fidelity Bond (the "fidelity bond" or "the bond") issued by National

Union to insure Centrix against fraudulent actions by Centrix officers and employees.

Docket No. 1 at 41-44, ¶¶ 89-105; *see generally* Bankruptcy Case No. 09-01150-EEB.

Centrix alleges that it suffered losses that are covered under the fidelity bond.

Specifically, Centrix alleges that, from approximately 2002 to 2006, five former officers

of Centrix Financial, LLC, Robert Sutton, John Schreven, Roland Anderson, Gerald

Fitzgerald, and Howard Klemmer, fraudulently diverted "at least $83,000,000" from

Centrix, Docket No. 1 at 22, ¶ 2, that the losses were covered by the fidelity bond, *id.* at

42, ¶ 93, and that defendants have refused to satisfy their obligations under the bond.

*Id.* at 41, ¶ 87.  Centrix brings claims for breach of contract, declaratory judgment, and

specific performance.  *See generally id.*

National Union asserts two defenses relevant to this Order.  First, National Union

asserts that Centrix failed to provide notice to National Union within 60 days of

discovery of its alleged losses, as required by the bond.  *See* Docket No. 95 at 12.

Second, National Union asserts that Centrix discovered its alleged losses before the

bond period and therefore the bond does not cover such losses.  *Id.*  This defense is

based in part on a 2006 lawsuit filed by a Centrix shareholder named Douglas Burke for

fraud and mismanagement, which National Union argues raised many of the same

allegations that Centrix now claims as bases for its losses under the bond.  *See id.*; *see*

*also* Docket No. 106 at 8.  In opposing defendants' motion for summary judgment in the

bankruptcy court, Centrix argued that, to the extent that the Burke lawsuit placed it on

notice of its claims under the fidelity bond, it provided timely notice of that lawsuit to

AIG, and AIG was therefore on constructive notice of Centrix's claims under the fidelity

bond.  *See* Bankruptcy Case No. 09-01150-EEB (Docket No. 95 at 25, 64).

## II. ANALYSIS

### A. Evidence Concerning Whether Untimely Notice Prejudiced National Union

Defendants' first motion in limine seeks to exclude all evidence and argument

regarding whether defendants suffered prejudice due to Centrix's purported failure to

provide National Union timely notice of its claim.  Docket No. 106 at 2-4.[2]  The fidelity

bond, which is labeled a Financial Institution Bond, states that, "[a]t the earliest

practicable moment, not to exceed [60][3] days, after discovery of loss, [Centrix] shall

give [National Union] notice thereof."  Docket No. 106-1 at 15.  The bond "applies to

loss discovered by the insured during the Bond Period."  *Id.* at 13.  The bond terminates

"immediately upon expiration of the Bond Period."  *Id.* at 18.[4]   Regarding when a loss is

discovered, the bond provides that

> [d]iscovery occurs when the Insured first becomes aware of facts which would
> cause a reasonable person to assume that a loss of a type covered by this
> bond has been or will be incurred, regardless of when the act of [sic] acts
> causing or contributing to such loss occurred, even though the exact amount
> of details of loss may not then be known.  Discovery also occurs when the
> Insured receives notice of an actual or potential claim in which it is alleged

---

[2]The parties appear to agree that Colorado law applies to the breach of contract claims in this case.  The Court will operate under the same premise.  *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir.2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

[3]The language of the bond provides for a 30-day notice period, *see* Docket No. 106-1 at 15, but the term was changed to 60 days by Rider 12.  *See id.* at 34.

[4]The bond period, as set forth in Item 2 of the bond's declarations, is from 12:01 a.m. on May 29, 2006 to 12:01 a.m. on May 29, 2007.  Docket No. 106-1 at 2.

that the Insured is liable to a third party under circumstances which, if true, would constitute a loss under this bond.

*Id.* at 13-14.

At issue is whether the so-called "notice-prejudice" rule applies to fidelity bonds. The notice-prejudice rule provides that, if an insured's notice of its claim to an insurer is unreasonably delayed, the insurer "may only deny benefits if it can prove by a preponderance of the evidence that it was prejudiced by the delay." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 232 (Colo. 2001). Colorado adopted the notice-prejudice rule in 2001 in a case involving an uninsured motorist policy. *See id.* The *Clementi* court cited three policy justifications for adopting the rule: "(1) the adhesive nature of insurance contracts, (2) the public policy objective of compensating tort victims, and (3) the inequity of the insurer receiving a windfall due to a technicality." *Id.* at 229. The Colorado Supreme Court subsequently applied the notice-prejudice rule in the context of an "occurrence" liability policy. *See Friedland v. Travelers Indem. Co.,* 105 P.3d 639 (Colo. 2005). The court has recently held, however, that the notice-prejudice rule does not apply to a date-certain notice requirement in a "claims-made" liability policy. *See Craft v. Philadelphia Indem. Ins. Co.,* 343 P.3d 951, 957-58 (Colo. 2015).[5]

---

[5]An occurrence policy is "an insurance policy that provides liability coverage only for injury or damage that occurs during the policy term, regardless of when the claim is actually made." 3 Colo. Code Regs. 702-5:5-1-8 § 4(c) (2014). A claims-made policy is "an insurance policy that provides coverage only if a claim is made during the policy period or any applicable extended reporting period. A claim made during the policy period could be charged against a claims-made policy even if the injury or loss occurred many years prior to the policy period. If a claims-made policy has a retroactive date, an occurrence prior to that date is not covered." *Id.* § 4(a).

Centrix argues that defendants' motion should be denied because the fidelity bond is an occurrence policy rather than a claims-made policy.  Docket No. 112 at 5-6.[6]   National Union responds that, while the bond is not identical to a claims-made liability policy, it is "akin to a claims-made policy for purposes of the notice/prejudice rule."  Docket No. 115 at 4 (defendants' emphasis removed).

The Court looks to the Colorado Supreme Court's discussion of the notice provisions in *Clementi*, *Friedland*, and *Craft* to determine whether Colorado would extend the notice-prejudice rule to the notice provision in this case.  In *Clementi*, the uninsured motorist policy at issue required the insured to "submit written proof of the claim . . . as soon as practicable."  *Clementi*, 16 P.3d at 226.  Similarly, in *Friedland*, the liability policy required that "written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances of the occurrence, and the names and addresses of the injured and of available witnesses, shall be given . . . as soon as practicable."  *Friedland*, 105 P.3d at 642.  In *Craft*, the claims-made policy required notice "'as soon as practicable'" but "'not later than 60 days' after the expiration of the policy."  *Craft*, 343 P.3d at 953.  Here, the bond required Centrix to provide notice to National Union "[a]t the earliest

---

[6]Centrix's focus on whether the fidelity bond is an occurrence or claims-made liability policy is misplaced.  A fidelity bond is not a liability policy.  *See* 11 Steven Plitt et al., *Couch on Insurance* § 167:43 (3d ed. 2008) (a fidelity bond "is not a liability insurance policy. . . . [W]hereas liability insurance covers the liability of the insureds to a third-party, fidelity bonds cover the loss of property owned by the insureds or held by the insureds, as a result of employee dishonesty and other perils.").

practicable moment, not to exceed [60][7] days, after discovery of loss."  Docket No.
106-1 at 15.

      As noted by the Colorado Supreme Court in *Craft*, the key difference between
occurrence and claims-made liability policies is that the former requires notice of an
occurrence "as soon as practicable," while claims-made policies typically have a "date-
certain notice requirement[]."  *Craft*, 343 P.3d at 960-61.  As discussed in *Craft*, claims-
made policies arose in the 1970s in response to the difficulties that underwriters faced
writing professional malpractice insurance policies.  *Craft*, 343 P.3d at 957-58.  Claims-
made policies were designed such that "the risk to the insurer passes when the policy
period expires," which led to more predictable rate structures.  *Id.* at 958.  Whereas the
prompt notice requirements in occurrence policies exist so that an insurer is not
deprived of the ability to investigate and defend a claim, the date-certain notice
requirement in a claims-made policy "defines the temporal boundaries of the policy's
basic coverage terms," *id.*, and is therefore "a material condition precedent to
coverage."  *Id.* at 961.  The *Craft* court found that, because the parties to claims-made
policies agree to limit the insurer's risk to a defined policy term, applying the notice-
prejudice rule to such a policy "would alter a basic term of the insurance contract."  *Id.*
at 959.

      The Court finds that the fidelity bond here is much closer in substance to the
claims-made policy in *Craft* than the occurrence policy in *Friedland*.  First, there is no
merit to Centrix's argument that the fidelity bond is an occurrence policy.  The fidelity

---

[7]The language of the bond provides for a 30-day notice period, *see* Docket No.
106-1 at 15, but the term was changed to 60 days by Rider 12.  *See id.* at 34.

bond covers events discovered during the policy term, regardless of when the acts occurred, *see* Docket No. 106-1 at 13, which is fundamentally inconsistent with an occurrence policy.  *See* 3 Colo. Code Regs. 702-5:5-1-8 § 4(c).  Moreover, like a claims-made policy, the bond terminates once the bond period expires.  *See* Docket No. 106-1 at 18.  The bond applies only to losses discovered during the bond period, *id.* at 13, and states that notice of such a loss must be provided within 60 days.  *See id.* at 15 (as modified by Rider 12).  Thus, the bond sets an outer limit for notice at 60 days from the expiration of the bond period (for a loss discovered on the last day of the period).  This is consistent with *Craft's* characterization of the date certain requirements in claims-made policies, which require notice "within the policy period or a defined reporting period thereafter."  *Craft* 343 P.3d at 958.  Thus, similar to the claims-made policy construed in *Craft*, the Court finds that the 60-day notice requirement in the fidelity bond "defines the temporal boundaries of the [bond's] basic coverage terms," *id.*, and is a condition precedent to coverage.

        The public policy concerns that prompted Colorado's adoption of the notice-prejudice rule in certain contexts–namely, the adhesive nature of the contract, the public's interest in compensating tort victims, and the inequity of an insurer's receiving a windfall from a technicality–are not present here.  The parties provided little information to the Court about the negotiations that took place before the parties agreed to the terms of the bond and the riders amending them.  However, although the fidelity bond appears to be based on a form agreement, the bond is modified by seventeen different riders, *see* Docket No. 106-1 at 19-39, which suggests that the

parties were capable of negotiating the bond's terms.  And, given the Court's holding that the notice provision is a condition precedent to coverage, declining to apply the notice-prejudice rule does not result in a windfall to defendants.

The First Circuit's decision in *F.D.I.C. v. Ins. Co. of North Am.*, 105 F.3d 778, 783-84 (1st Cir. 1997), is instructive in determining whether to apply the notice-prejudice rule to fidelity bonds.  In that case, the First Circuit had to decide whether Massachusetts' adoption of the notice-prejudice rule in the liability policy context extended to fidelity bonds.  Massachusetts, like Colorado, adopted the notice-prejudice rule with respect to liability policies generally, *see Johnson Controls, Inc. v. Bowes*, 409 N.E. 2d 185 (Mass. 1980), but held that the rule applied only to provisions that required notice "as soon as practicable" and not to requirements that notice be given "within the policy year."  *See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 551 N.E. 2d 28, 30 (Mass. 1990).  The First Circuit held that *Johnson* did not overrule previous Massachusetts case law that held that fidelity bonds were to be construed as written and that notice provisions in fidelity bonds were therefore conditions precedent to recovery.  *Ins. Co. of North Am.*, 105 F.3d at 784 (citing *Gilmour v. Standard Surety and Casualty Co.*, 197 N.E. 673 (Mass. 1935)).[8]

_____

[8]In *F.D.I.C. v. Oldenburg*, 34 F.3d 1529 (10th Cir. 1994), the Tenth Circuit held that, under Utah law, an insurer could not rely on late notice to avoid payment on a fidelity bond and noted that the "modern trend is to require insurers to show prejudice in order to avoid policy coverage for noncompliance with certain notice provisions."  34 F.3d at 1546.  Unlike in *Oldenburg*, the Colorado Supreme Court has limited the notice-prejudice rule to certain types of liability policies.  *See Ins. Co. of North Am.*, 105 F.3d at 787 (distinguishing *Oldenburg* as inapplicable to Massachusetts law).  The Court further notes that the Utah legislature passed a statutory notice-prejudice rule applicable to all insurance policies.  *See* Utah Code Ann. § 31A-21-312(2) (1985).  Although this statute did not apply retroactively to the policy at issue in *Oldenburg*, the

Finally, the Court addresses plaintiffs' argument that AIG's adjuster, Carl Grant, stated in an executive claim summary that Colorado "require[s] a showing of prejudice for late notice." Docket No. 112 at 4. Mr. Grant's statement is irrelevant to the issues in this dispute. First, there is no indication that Mr. Grant had the authority to bind defendants to a particular legal position. Second, whether the notice-prejudice rule applies in this context is a question of law.

In sum, the Court finds that, under Colorado law, the notice-prejudice rule does not apply to the fidelity bond. As a result, defendants' motion to exclude any evidence or argument that they did not suffer prejudice as a result of Centrix's purported failure to provide notice within 60 days of discovery of its claim is granted.

### B.  Evidence of Purported Notice to an Insurer Other than National Union

Defendants' fourth motion in limine seeks to exclude evidence of notice of the *Burke* lawsuit, which Centrix has argued put National Union on constructive notice of its claims under the fidelity bond. Docket No. 106 at 8-10. National Union notes that what Centrix has elsewhere characterized as notice to "AIG" was in fact provided to another insurance company, American International Specialty Insurance Lines Company ("AISLIC"), and that AISLIC, like National Union, is a subsidiary of AIG. *Id.* at 8. Centrix responds that the evidence shows that "AIG was intimately acquainted with the allegations in [the] *Burke* lawsuit in 2006 because Centrix had timely tendered

_____

Tenth Circuit cited the statute as supporting its holding that Utah would apply the notice-prejudice rule in the fidelity bond context. *Oldenburg*, 34 F.3d at 1546, n.19. Given the substantial differences between Colorado and Utah law on this issue, *Oldenburg* is inapplicable.

the case to AIG under AIG's [Directors and Officers liability] policy."  Docket No. 112 at 10.

The Court finds that, in the absence of any evidence that Centrix reasonably believed that notice to AISLIC constituted direct notice to National Union as well (such as a common agent who represented both companies in their dealings with Centrix), notice to AISLIC will not be imputed to National Union, and any evidence of such notice will be excluded from trial.  Neither Centrix nor defendants cites authority that is precisely on point, and the Court is unaware of any case law that considers whether notice to a subsidiary of the same parent insurance company, without more, can constitute constructive notice.  However, numerous courts have found that, in the context of the "identity of interests" exception to the relation back rule, a corporate parent-subsidiary relationship, standing alone, is not sufficient to impute one entity's notice of a lawsuit to the other entity.  *See In re Allbrand Appliance & Television Co.*, 875 F.2d 1021, 1025-26 (2d Cir. 1989 ("the parent-subsidiary relationship standing alone is simply not enough[.] . . .  The two businesses must have organized or conducted their activities in a manner that strongly suggests a close linkage"); *see also Santora v. Starwood Hotel and Resorts Worldwide, Inc.*, 2007 WL 3037098 at *5 (N.D. Ill. Oct. 16, 2007) (allowing leave to amend to include a subsidiary but noting that the court would dismiss the new defendant "upon a showing that a sufficient relationship to impute notice does not exist"); *but see E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F. Supp. 310, 314 (D. Del. 1985) (holding that the parent-subsidiary relationship was sufficient to constitute identity of interest for notice purposes).  The relationship between two subsidiaries of the same parent is further

removed than the parent-subsidiary relationship.  Since courts disagree about whether

the latter relationship, standing alone, is sufficient to impute notice from one entity to

the other, the Court finds that notice to AISLIC is not *de jure* notice to National Union.

Given Centrix's failure to show that National Union and AISLIC conducted their

activities in a manner that suggested that the two companies were sufficiently

interrelated, notice to AISLIC will therefore not be imputed to National Union.[9]

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants National Union Fire Insurance Company of

Pittsburgh, PA and AIG Domestic Claims, Inc.'s Consolidated Motions in Limine

[Docket No. 106] is **GRANTED** in part with respect to defendants' first and fourth

motions.  It is further

**ORDERED** that, at trial, plaintiffs will not be allowed to introduce evidence that

failure to provide timely notice under the fidelity bond caused no prejudice to defendant

National Union and will not be permitted to introduce evidence of notice provided to an

insurer other than National Union.

_____

[9]The Court further notes that, while not wholly analogous, numerous courts have held that notice to one governmental agency is not imputed to another agency of the same government unless some evidence exists that the agencies shared information. *E.g.*, *Barrie v. United States*, 615 F.2d 829, 830 (9th Cir. 1980) (in the absence of evidence of actual knowledge, "the imputation of knowledge of one government agency to another is impermissible"); *United States v. Harms*, 442 F.3d 367, 377 (5th Cir. 2006) ("notice or actual knowledge of one United States government agency will not be imputed to another agency"); *Massachusetts v. Mylan Labs.*, 608 F. Supp. 2d 127, 150 (D. Mass. 2008) ("the knowledge of one agency of a government is not imputed to another agency of that government" unless "there is some relationship between the agencies-either some reason for the agency without knowledge to seek the information or a reason for the knowledgeable agency to transmit the information").

DATED June 2, 2015.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge